IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

<table>
<tr><td>SHERYL TAYLOR,</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>   Plaintiff,</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>v.</td><td>)</td><td>No. 08-2735</td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>TIMOTHY F. GEITHNER,</td><td>)</td><td></td></tr>
<tr><td>Secretary of the Treasury,</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>   Defendant.</td><td>)</td><td></td></tr>
</table>

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S BREACH
OF SETTLEMENT CLAIM AND GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ON PLAINTIFF'S RETALIATION CLAIM

Before the Court is the December 30, 2010 Motion to Dismiss and Motion for Summary Judgment filed by Defendant Timothy F. Geithner ("Geithner"), Secretary of the Treasury.[1] (Def.'s Mot. to Dismiss and Mot. for Summ. J., ECF No. 53.) ("Def.'s Mots.") Plaintiff Sheryl Taylor ("Taylor") responded in opposition on January 26, 2011. (Pl.'s Br. in Opp'n to Def.'s Mot. to Dismiss and Mot. for Summ. J., ECF No. 63.) ("Pl.'s Resp.") Geithner responded to Taylor's counter-statement of material facts on February 11, 2011. (Def.'s Resp. to Pl.'s Counter Statement of Material Facts, ECF No. 66.) ("Def.'s Reply")

---

[1] Plaintiff Sheryl Taylor sues Geithner in his official capacity as head of the executive agency at which she works. (See Second Am. Compl. ¶ 4, ECF No. 22.)

For the following reasons, Geithner's Motion to Dismiss Taylor's breach of settlement agreement claim is GRANTED, and his Motion for Summary Judgment on Taylor's retaliation claim is GRANTED.

## I.   Background[2]

Taylor is an employee of the Internal Revenue Service ("IRS") in Memphis, Tennessee. (See Def.'s Mots. 2-3; Pl.'s Resp. 3.) From July 2004 to September 17, 2006, Taylor worked in a unit supervised by Ethel Shields ("Shields").[3] (See Def.'s Mots. 3; Pl.'s Resp. 3.) Before working under Shields' supervision, Taylor filed an equal employment opportunity ("EEO") complaint.[4] (See Def.'s Mots. 3; Pl.'s Resp. 3.) Her EEO complaint did not involve Shields. (See Def.'s Mots. 3; Pl.'s Resp. 3.)

On September 3, 2004, Taylor filed a complaint alleging retaliation with the Department of the Treasury. (See Pl.'s Resp. 5; Def.'s Reply 1; Ex. K, ECF No. 63-11.) Shields issued a written warning to Taylor on September 27, 2004, stating that "[r]efusing to follow the chain of command may be considered an

---

[2] Unless otherwise stated, all facts discussed in this Part are undisputed.
[3] Although Taylor denies that she worked for an IRS unit supervised by Shields from 2004 to 2006, she bases her denial on documents stating that Shields was Taylor's supervisor from July 2004 to September 17, 2006. (See Pl.'s Resp. 3; Ex. 6, ECF No. 53-1; Ex. A, at ¶ 4, ECF No. 63-1.) Therefore, the Court assumes that Taylor does not dispute Shields' statements that she was Taylor's supervisor between July 2004 and September 17, 2006.
[4] It appears that this complaint was filed on June 25, 2004. (See Pl.'s Resp. 5; Def.'s Reply 1.)

act of insubordination and could lead to disciplinary actions."[5] (<u>See</u> Pl.'s Resp. 5; Def.'s Reply 2; Ex. C, ECF No. 63-3.)

On April 13, 2005, Taylor filed an EEO complaint about a pending three-day suspension.[6] (<u>See</u> Def.'s Mots. 4; Pl.'s Resp. 4.) In July 2005, the complaint was resolved by a settlement agreement between Taylor and the IRS. (<u>See</u> Def.'s Mots. 4; Pl.'s Resp. 4; Ex. 7, ECF No. 53-1.) As part of the agreement, the IRS agreed to remove the three-day suspension from Taylor's Time and Attendance record within WebSETR, a time and attendance system used by the IRS,[7] by August 5, 2005, and to remove any reference to the suspension from Taylor's employee personnel file. (<u>See</u> Def.'s Mots. 4-5; Pl.'s Resp. 4; Ex. 7, ECF No. 53-1.)

On August 18, 2005, Taylor wrote a letter alleging that the IRS had breached the settlement agreement. (<u>See</u> Def.'s Mots. 5; Pl.'s Resp. 5.) Taylor believed that negative information was

---

[5] Although Geithner does not directly state whether he admits or denies this fact, his response does not appear to dispute this fact. (<u>See</u> Def.'s Reply 2.)

[6] Although the parties agree that Taylor filed the complaint on April 13, 2005, she did not receive a letter proposing to suspend her until April 15, 2005, and did not serve her three-day suspension until May 9, 2005. (<u>See</u> Ex. B, ECF No. 63-2.) She describes the complaint she filed on April 13, 2005, as an "informal EEO retaliation complaint, or pre-complaint, concerning the three-day suspension that was proposed and that later was imposed on me in connection with my interactions with Stephanie Boone-Gage, whom I believe was a lead Offer Examiner." (Ex. I, at ¶ 4, ECF No. 63-9.)

[7] Although Taylor denies a paragraph stating in part that WebSETR is a time and attendance system used by the IRS (<u>see</u> Def.'s Mots. 5; Pl.'s Resp. 4), she admits that the settlement agreement provided that her three-day suspension would be removed from her time and attendance record within WebSETR (<u>see</u> Def.'s Mots. 4-5; Pl.'s Resp. 4). Therefore, Taylor does not seem to dispute that WebSETR is a time and attendance system used by the IRS.

contained in her personnel records in breach of the agreement. (See Def.'s Mots. 5; Pl.'s Resp. 5.) In a final decision dated November 1, 2006, the IRS concluded that the agreement had been breached, but that the agency was in compliance with the agreement at that time. (See Def.'s Mots. 5; Pl.'s Resp. 5; Ex. 9, ECF No. 53-1.) Taylor did not appeal that decision. (See Def.'s Mots. 5; Pl.'s Resp. 5.)

On August 4, 2006, Taylor filed an EEO complaint. (See Def.'s Mots. 3; Pl.'s Resp. 3.) The issues accepted for investigation were whether the IRS retaliated against her when, beginning in May 2004, Shields gave negative references about Taylor to prospective employers, and whether, beginning in May 2006, Shields violated personnel policy by verifying Taylor's employment with prospective employers instead of directing them to the automated work verifier system. (See Def.'s Mots. 3; Pl.'s Resp. 3.)

On May 10, 2007, the IRS received a letter from Taylor dated May 2, 2007, in which Taylor again alleged that the IRS had breached the settlement agreement. (See Def.'s Mots. 5-6; Pl.'s Resp. 5.) The IRS did not issue a decision within 35 days. (See Def.'s Mots. 6; Pl.'s Resp. 5.) Taylor appealed to the Equal Employment Opportunity Commission ("EEOC"), which ordered the IRS to conduct an investigation. (See Def.'s Mots. 6; Pl.'s Resp. 5; Ex. 10, ECF No. 53-1.) Taylor requested

reconsideration of the decision, which the EEOC denied on September 10, 2008. (See Def.'s Mots. 6; Pl.'s Resp. 5; Ex. 10, ECF No. 53-1.)

In compliance with the EEOC's order, the IRS conducted another investigation. (See Def.'s Mots. 6; Pl.'s Resp. 5.) A final decision was issued on October 10, 2008, which concluded that the agency was in compliance with the settlement agreement. (See Def.'s Mots. 6; Pl.'s Resp. 5.) The final decision noted that Taylor had failed to appeal the prior decision on her claim of breach of the settlement agreement and that she was attempting to re-litigate the same claim. (See Def.'s Mots. 6; Pl.'s Resp. 5.)

Many of the underlying facts about Taylor's retaliation claim are disputed. The parties agree that, on December 1, 2005, Taylor notified Shields by e-mail that she wanted to participate in a program sponsored by the IRS called the Presidential Classroom. (See Def.'s Mots. 4; Pl.'s Resp. 3.) Shields responded by e-mail as follows:

> Sheryl I have not received confirmation that the IRS will participate in the Presidential Classroom program. There are no approvals for travel unless Mission Critical for IRS (SB/SE). I will not provide a letter of recommendation because in my observation you have not demonstrated the skills needed to participate in this program. My concerns are your ability to effectively communicate your meet and deal skills [sic] and your interrelationship skills that I deem necessary for this type of assignment.

5

(See Def.'s Mots. 4; Pl.'s Resp. 3.)   Taylor testified during
her deposition that she did not know whether Shields had sent
the e-mail to anyone other than her. (See Def.'s Mots. 4; Pl.'s
Resp. 3-4; Dep. of Sheryl Taylor 91:16-21, ECF No. 53-1.)   After
more communication between Shields and Taylor on December 1,
2005, Shields changed her mind and gave Taylor the following
recommendation for the Presidential Classroom program:

> Ms. Taylor has been in my unit since July 2004 until
> the present.  During this time she has performed her
> assignments timely.  Ms. Taylor's job requires her to
> sometime [sic] take telephone calls from taxpayers.
> She is very professional and conscientious when
> providing the taxpayers with guidance and
> instructions.  Ms[.] Taylor attended a two week
> Classroom Instructor Training to prepare to instruct
> classes within the organization.  She is scheduled to
> instruct some classes in the future.  Ms. Taylor
> served as a volunteer for the Combined Federal
> Campaign and also participated in the Day of Caring
> this year.

(See Def.'s Mots. 4; Pl.'s Resp. 4.)

According to Geithner, Taylor did not receive any
disciplinary actions and received an outstanding performance
evaluation while she was under Shields' supervision. (See
Def.'s Mots. 3.)   Geithner asserts that Taylor hired a company
called Document Reference Check ("DRC")[8] to solicit Shields'
opinion about her work. (See id.)   Someone from DRC called
Shields, and Taylor was not a party to that conversation. (See

---

[8] The parties inconsistently refer to the company as Document Reference Check
and Documented Reference Check. (See Def.'s Mots. 3; Pl.'s Resp. 3.)   For
consistency, the Court will refer to the company as DRC.

id.)  Geithner  also  asserts  that,  on  August  4,  2005,  Genevle
Acklin,  an  IRS  Manager,  changed  Taylor's  information  in  WebSETR
to  reflect  that  she  had  received  a  leave  of  three  days  without
pay  instead  of  a  three-day  suspension  during  the  period  she  was
absent  from  work.   (See  id.  at  5.)   Nevertheless,  WebSETR  is
programmed  to  maintain  a  historical  record  of  personnel  actions
for  twenty-five  pay  periods,  and  it  is  not  physically  possible
for  a  manager  or  WebSETR  representative  to  take  out  all
reference  to  personnel  action  during  that  period.   (See  id.)
Geithner  also  asserts  that  WebSETR  is  not  programmed  to  transmit
any  information  from  the  IRS  to  the  United  States  Office  of
Personnel  Management  ("OPM")  and  that  OPM  does  not  receive
information  about  federal  employees  while  they  remain  employed
by  the  federal  government.   (See  id.)

    According  to  Taylor,  she  received  disciplinary  actions
while  under  Shields'  supervision.   (See  Pl.'s  Resp.  3.)   On
September  27,  2004,  Shields  gave  Taylor  a  written  warning  for
contacting  a  director's  secretary  instead  of  following  the  chain
of  command.   (See  id.)   On  April  20,  2005,  Shields  gave  Taylor  a
written  warning  for  using  a  cellular  phone  in  the  work  area.
(See  id.)   On  May  9,  2005,  the  IRS  imposed  a  three-day
suspension  on  Taylor.[9]   (See  id.)

---

[9] Taylor  states  that  the  IRS  imposed  a  three-day  suspension  on  her  on  May  2,
2005.   (See  Pl.'s  Resp.  3.)   The  document  she  cites  in  support  states  that

Taylor admits that she asked DRC to contact Shields for references, that Wendy Casey ("Casey") of DRC called Shields, and that Taylor was not a party to the conversation between Shields and Casey. (See id.) Taylor asserts that the settlement agreement between her and the IRS provided that Sarah Neal ("Neal"), an IRS manager, would remove the record of her three-day suspension from her time and attendance file within WebSETR by August 5, 2005. (See id. at 4.) Neal testified during her deposition that Labor Relations would have handled compliance with the promise and that nobody reported back to her whether the promise had been fulfilled. (See id.) Taylor also asserts that OPM does receive information about federal employees before they separate from federal employment, as evidenced by a document in OPM's files on August 9, 2005, about her. (See id.)

In Taylor's second amended complaint, she asserts two claims: (1) retaliation for her complaints about employment discrimination, in violation of Title VII, 42 U.S.C. § 2000e-16(a), and (2) breach of the settlement agreement requiring removal of any records of her three-day suspension from her time and attendance file and employee personnel file. (See Second Am. Compl. 4-5, ECF No. 22.) Geithner has moved to dismiss

---

she did not serve her three-day suspension until May 9, 2005. (See id.; Ex. B, ECF No. 63-2.)

Taylor's breach of settlement agreement claim for lack of subject matter jurisdiction and has moved for summary judgment on Taylor's retaliation claim. (See Def.'s Mots. 1, 6-17, 19.)

## II.  Standard of Review

"When the defendant challenges the existence of subject-matter jurisdiction, the plaintiff bears the burden of establishing that jurisdiction exists." Lewis v. Whirlpool Corp., 630 F.3d 484, 487 (6th Cir. 2011) (citing Nichols v. Muskingum Coll., 318 F.3d 674, 677 (6th Cir. 2003)). "[W]hen a court lacks subject-matter jurisdiction over a claim, it must immediately dismiss not just that claim but any pendent state-law claims as well—no matter how late in the case the district or appellate court identifies the jurisdictional defect." Winnett v. Caterpillar, Inc., 553 F.3d 1000, 1007 (6th Cir. 2009) (citation omitted).

"Rule 12(b)(1) motions to dismiss for lack of subject-matter jurisdiction generally come in two varieties: a facial attack or a factual attack." Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co., 491 F.3d 320, 330 (6th Cir. 2007) (citing Ohio Nat'l Life Ins. Co. v. United States, 922 F.2d 320, 325 (6th Cir. 1990)). "A facial attack on the subject-matter jurisdiction alleged in the complaint questions merely the sufficiency of the pleading." Id. (citing Ohio Nat'l Life Ins. Co., 922 F.2d at 325). "When reviewing a facial attack, a

district court takes the allegations in the complaint as true, which is a similar safeguard employed under 12(b)(6) motions to dismiss." Id. (citing Ohio Nat'l Life Ins. Co., 922 F.2d at 325). "If those allegations establish federal claims, jurisdiction exists." Id. (citing Ohio Nat'l Life Ins. Co., 922 F.2d at 325).

"Where, on the other hand, there is a factual attack on the subject-matter jurisdiction alleged in the complaint, no presumptive truthfulness applies to the allegations." Id. (citing Ohio Nat'l Life Ins. Co., 922 F.2d at 325). "When a factual attack, also known as a 'speaking motion,' raises a factual controversy, the district court must weigh the conflicting evidence to arrive at the factual predicate that subject-matter [jurisdiction] does or does not exist." Id. (citing Ohio Nat'l Life Ins. Co., 922 F.2d at 325). "In its review, the district court has wide discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve jurisdictional facts." Id. (citing Ohio Nat'l Life Ins. Co., 922 F.2d at 325).

Under Federal Rule of Civil Procedure 56, on motion of a party, the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment

"bears the burden of clearly and convincingly establishing the nonexistence of any genuine [dispute] of material fact, and the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion." Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986); see Fed. R. Civ. P. 56(a). The moving party can meet this burden by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of her case. See Fed. R. Civ. P. 56; Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989).

When confronted with a properly supported motion for summary judgment, the respondent must set forth specific facts showing that there is a genuine dispute for trial. See Fed. R. Civ. P. 56. A genuine dispute for trial exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). One may not oppose a properly supported summary judgment motion by mere reliance on the pleadings. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). Instead, the nonmovant must present "concrete evidence supporting [her]

11

claims." Cloverdale Equip. Co. v. Simon Aerials, Inc., 869 F.2d 934, 937 (6th Cir. 1989) (citations omitted); see Fed. R. Civ. P. 56(c)(1).   The district court does not have the duty to search the record for such evidence.   See Fed. R. Civ. P. 56(c)(3); InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989).   The nonmovant has the duty to point out specific evidence in the record that would be sufficient to justify a jury decision in her favor.   See Fed. R. Civ. P. 56(c)(1); InterRoyal Corp., 889 F.2d at 111. "Summary judgment is an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action[,] rather than a disfavored procedural shortcut." FDIC v. Jeff Miller Stables, 573 F.3d 289, 294 (6th Cir. 2009) (internal quotation marks and citations omitted).[10]

## III. Jurisdiction

---

[10] Taylor filed a motion to compel on November 1, 2010, requesting an order requiring Geithner to designate a representative to testify about certain selection decisions for vacant positions in the IRS to which Taylor had applied.   (See Pl.'s Mot. to Compel, ECF No. 45.)   On April 1, 2011, the Magistrate Judge granted Taylor's motion to compel in part, finding that she had the right to obtain discovery about twenty-eight vacant positions, and deferred ruling on Taylor's motion to compel testimony about the remaining positions for which she had applied.   (Order Granting Pl.'s Mot. to Compel in Part, ECF No. 73.)   Geithner filed objections.   (Def.'s Exceptions to Magistrate Judge's Order Granting Pl.'s Mot. to Compel in Part, or in the Alternative, Motion to Clarify Issues, ECF No. 81.)   Taylor has responded to Geithner's summary judgment motion and statement of material facts and has provided her own statement of additional facts.   (See Pl.'s Resp. 2-8.) Taylor has not argued in response that she has inadequate information to respond to Geithner's summary judgment motion or that the motion is premature.   Based on the filings of the parties, which reveal, as discussed in Part IV, that there is no dispute as to any material fact, Geithner's motions are ripe for decision.

The parties dispute whether this Court has jurisdiction over Taylor's claim that the IRS breached the settlement agreement disposing of her discrimination complaint. (Compare Def.'s Mots. 6-11 (arguing that the Court lacks subject matter jurisdiction over Taylor's breach of settlement agreement claim because the United States has not waived sovereign immunity in regard to lawsuits alleging breach of settlement agreements in federal employee discrimination cases and because Taylor has failed to exhaust administrative remedies), with Pl.'s Resp. 8-14 (arguing that the Court has subject matter jurisdiction over Taylor's breach of settlement agreement claim because the Court may exercise supplemental jurisdiction over the claim and she has exhausted her administrative remedies).)

Although the Sixth Circuit Court of Appeals does not seem to have addressed whether district courts have jurisdiction over a federal employee's claim that the federal government breached a settlement agreement disposing of the federal employee's Title VII claim, the Fourth and Tenth Circuit Courts of Appeals have held that they do not. See Lindstrom v. United States, 510 F.3d 1191, 1192-96 (10th Cir. 2007) (affirming district court's determination that it did not have subject matter jurisdiction over plaintiff's suit to enforce a settlement agreement he had reached with the Department of the Interior on his disability discrimination claim); Frahm v. United States, 492 F.3d 258, 262

13

(4th Cir. 2007) ("Because neither the settlement agreement nor a statute allow Miss Frahm to sue the government for breach of the settlement agreement, her action was properly dismissed.")

"The district courts of the United States . . . are 'courts of limited jurisdiction.   They possess only that power authorized by Constitution and statute . . . .'" Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 552 (2005) (quoting Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994)).   "The United States, as sovereign, is immune from suit save as it consents to be sued . . . ." Frahm, 492 F.3d at 262 (quoting United States v. Sherwood, 312 U.S. 584, 586 (1941)); see also Premo v. United States, 599 F.3d 540, 544 (6th Cir. 2010) ("Sovereign immunity prevents suit against the United States without its consent." (citing United States v. Mitchell, 463 U.S. 206, 212 (1983))).   "Congress has, admittedly, waived sovereign immunity in Title VII suits where the federal government is the employer." Frahm, 492 F.3d at 262 (citing 42 U.S.C. § 2000e-16(d)).   "However, this statutory waiver does not expressly extend to monetary claims against the government for breach of a settlement agreement that resolves a Title VII dispute." Id.   "Even if the matter were at all ambiguous, the issue is revolved by the rule that the 'scope' of a 'waiver of the Government's sovereign immunity will be strictly construed . . . in favor of the sovereign.'" Id.

(quoting <u>Lane v. Pena</u>, 518 U.S. 187, 192 (1996)).  No statute allows federal employees to sue the government for breach of settlement agreements.  <u>See</u> <u>id.</u>  Therefore, district courts lack jurisdiction over federal employees' claims that the federal government breached settlement agreements resolving Title VII disputes.  <u>See</u> <u>id.</u>; <u>see also</u> <u>Lindstrom</u>, 510 F.3d at 1195 (affirming district court's determination that it lacked subject matter jurisdiction over a plaintiff's suit to enforce his settlement agreement).

As the Fourth and Tenth Circuits have noted, a regulation promulgated by the EEOC supports the conclusion that district courts lack jurisdiction.  <u>See</u> <u>Lindstrom</u>, 510 F.3d at 1194; <u>Frahm</u>, 492 F.3d at 262-63.  Under 29 C.F.R. § 1614.504(a), a federal government employee has limited remedies when he alleges that the federal government has breached a Title VII settlement agreement:

> Any settlement agreement knowingly and voluntarily agreed to by the parties, reached at any stage of the complaint process, shall be binding on both parties. Final action that has not been the subject of an appeal or civil action shall be binding on the agency. If the complainant believes that the agency has failed to comply with the terms of a settlement agreement or decision, the complainant shall notify the EEO Director, in writing, of the alleged noncompliance within 30 days of when the complainant knew or should have known of the alleged noncompliance. The complainant may request that the terms of settlement agreement be specifically implemented or, alternatively, that the complaint be reinstated for further processing from the point processing ceased.

15

29 C.F.R. § 1614.504(a). This regulation does not permit federal employees to sue in federal court to enforce their settlement agreements' terms. See Lindstrom, 510 F.3d at 1194. It does not contemplate such lawsuits. See id. ("The regulation does not authorize a suit to enforce the settlement agreement but rather only the reinstatement of the original discrimination complaint. . . . The EEOC, through 29 C.F.R. § 1614.504(a), has thus limited Mr. Lindstrom to suing on his original discrimination claim and not to enforce his settlement agreement. The district court therefore did not have subject matter jurisdiction to hear his suit under Title VII."); Frahm, 492 F.3d at 262-63 (concluding that, under 29 C.F.R. § 1614.504(a), "the government has specifically limited by regulation the forms of relief a plaintiff may seek when she alleges breach of a Title VII settlement agreement by a government agency" and rejecting plaintiff's argument that the two forms of relief outlined in the regulation are not the only remedies available in case of breach).

Here, Taylor asserts a claim that her federal employer breached the settlement agreement resolving her Title VII claim. (See Second Am. Compl. ¶¶ 18-19, 22.) The Court lacks subject matter jurisdiction over that claim. See Lindstrom, 510 F.3d at 1192-96; Frahm, 492 F.3d at 262-63; see also Munoz v. Mabus, 630

F.3d 856, 860-61 (9th Cir. 2010) ("We now join our sister circuits in holding that Congress' waiver of sovereign immunity under Title VII does not extend to suits to enforce settlement agreements entered into without genuine investigation, reasonable cause determination, and conciliation efforts by the EEOC."); Sawyer v. Nicholson, No. 06-CV-5907, 2010 WL 4510954, at *29 (N.D. Ill. Nov. 1, 2010) ("Because Congress has not consented to being sued by federal employees to enforce settlement agreements that resolve Title VII disputes, a court does not have subject matter jurisdiction over a breach of settlement agreement claim."); Gerdes v. Chertoff, No. 4:08CV3246, 2009 WL 2351742, at *1-4 (D. Neb. July 24, 2009) (concluding that the court did not have subject matter jurisdiction to enforce a settlement agreement regarding Title VII claims between a federal agency and a federal employee); Petrie v. Sec'y, Dep't of Veterans Affairs, No. 2:06cv01031 (WOB), 2009 WL 366628, at *1-2 (S.D. Ohio Feb. 11, 2009) (dismissing federal employee's claim for breach of settlement agreement against her employer for lack of jurisdiction).

Because the Court lacks subject matter jurisdiction over Taylor's breach of settlement agreement claim, it may not and should not exercise supplemental jurisdiction over that claim. "[A] suit to enforce a settlement agreement requires its own basis of jurisdiction independent from the federal source of the

17

underlying claim . . . ." Munoz, 630 F.3d at 863 (citing Kokkonen, 511 U.S. at 378, 381-82). "Supplemental jurisdiction 'is a doctrine of discretion, not of plaintiff's right.'" Habich v. City of Dearborn, 331 F.3d 524, 535 (6th Cir. 2003) (quoting Baer v. R&F Coal Co., 782 F.2d 600, 603 (6th Cir. 1986)). Section 1367(a) "does not constitute a waiver of sovereign immunity." United States v. Certain Land Situated in City of Detroit, 361 F.3d 305, 307 (6th Cir. 2004). The United States has not waived its sovereign immunity to Taylor's breach of settlement agreement claim. Therefore, the Court may not and should not exercise supplemental jurisdiction over that claim and declines to do so. See United States v. Park Place Assocs., Ltd., 563 F.3d 907, 933-34 (9th Cir. 2009); Certain Land Situated in City of Detroit, 361 F.3d at 307; Palmer v. Comm'r of Internal Revenue, 62 F. App'x 682, 685 (7th Cir. 2003). Taylor's breach of settlement agreement claim is DISMISSED.[11]

Because Taylor alleges that Geithner violated 42 U.S.C. § 2000e-16(a), the Court has subject matter jurisdiction over her retaliation claim under 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-16(c). See 28 U.S.C. § 1331; 42 U.S.C. § 2000e-16(c); Perry v. Harvey, 332 F. App'x 728, 730 n.1 (3d Cir. 2009); Ortiz v.

---

[11] Because the Court lacks jurisdiction over Taylor's breach of settlement agreement claim on the ground that the United States has not waived its sovereign immunity, the Court need not consider Geithner's alternative argument that the breach of settlement agreement claim is barred because Taylor has failed to exhaust her administrative remedies. (See Def.'s Mots. 9-11.)

Norton, 254 F.3d 889, 891 (10th Cir. 2001); Reddy v. Espy, No. 95-16351, 1996 WL 596224, at *1 (9th Cir. Oct. 16, 1996); Minnifield v. Dep't of Veterans Affairs, No. 3:08-cv-357, 2010 WL 1818047, at *1 (S.D. Ohio Apr. 14, 2010).

## IV.  Analysis

Geithner has moved for summary judgment on Taylor's retaliation claim.  (See Def.'s Mots. 11-17, 19.)  Taylor has responded in opposition, arguing that genuine issues of material fact preclude summary judgment. (See Pl.'s Resp. 14-22.)

"Title VII of the Civil Rights Act of 1964 forbids employment discrimination." West v. Gibson, 527 U.S. 212, 214 (1999).  "In 1972 Congress extended Title VII so that it applies not only to employment in the private sector, but to employment in the Federal Government as well."  Id. (citation omitted). The basic federal government employment antidiscrimination standard is that "[a]ll personnel actions affecting employees or applicants for employment [of specified Government agencies and departments] shall be made free from any discrimination based on race, color, religion, sex, or national origin." Id. (quoting 42 U.S.C. § 2000e-16(a)).  Under that standard, the federal government may not retaliate against federal employees.  See, e.g., Bonds v. Leavitt, 629 F.3d 369, 384 (4th Cir. 2011); Taylor v. Solis, 571 F.3d 1313, 1320 (D.C. Cir. 2009); Dossa v. Wynne, 529 F.3d 911, 915-16 (10th Cir. 2008); see also Kurtz v.

<u>McHugh</u>, No. 10-5042, 2011 WL 1885983, at *6 (6th Cir. May 18, 2011); <u>Hunter v. Sec'y of U.S. Army</u>, 565 F.3d 986, 995-97 (6th Cir. 2009); <u>Eneje v. Ashcroft</u>, 67 F. App'x 901, 905 (6th Cir. 2003).

"Title VII prohibits retaliation against an employee 'because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing' in connection with an allegedly unlawful employment practice." <u>Hunter</u>, 565 F.3d at 995 (quoting 42 U.S.C. § 2000e-3(a)). "Under the applicable federal framework, the 'anti-retaliation provision [of Title VII] protects an individual not from all retaliation, but from retaliation that produces an injury or harm.'" <u>Id.</u> (quoting <u>Burlington N. & Santa Fe Ry. Co. v. White</u>, 548 U.S. 53, 67 (2006)).

"In the absence of direct evidence, retaliation claims are also governed by the <u>McDonnell Douglas</u> burden-shifting framework." <u>Reed v. Metro. Gov't of Nashville & Davidson Cnty.</u>, 286 F. App'x 251, 255 (6th Cir. 2008) (citing <u>Weigel v. Baptist Hosp. of E. Tenn.</u>, 302 F.3d 367, 381 (6th Cir. 2002)). To establish a prima facie case of retaliation under Title VII using that framework, a plaintiff must demonstrate four elements:

> (1) [she] engaged in activity protected by Title VII;
> (2) this exercise of protected rights was known to
> defendant; (3) defendant thereafter took adverse

employment action against the plaintiff, or the plaintiff was subjected to severe or pervasive retaliatory harassment by a supervisor; and (4) there was a causal connection between the protected activity and the adverse employment action or harassment.

Hunter, 565 F.3d at 995-96; accord Reed, 286 F. App'x at 255. "If the plaintiff successfully establishes a prima facie case, the burden then shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse action." Reed, 286 F. App'x at 255 (citing Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254-56 (1981)); see also Hunter, 565 F.3d at 996. "The plaintiff may then seek to rebut the evidence by demonstrating that the articulated reason was a mere pretext for discrimination." Reed, 286 F. App'x at 255 (citing Burdine, 450 U.S. at 254-56); see also Hunter, 565 F.3d at 996.

Here, Taylor does not offer direct evidence of retaliation and seeks to demonstrate retaliation through the McDonnell Douglas burden-shifting framework. (See Pl.'s Resp. 8-9, 14-22.) The parties disagree about whether Taylor has demonstrated a prima facie case of retaliation. (See Def.'s Mots. 11-17, 19; Pl.'s Resp. 14-22.) According to Geithner, Taylor cannot establish a prima facie case because she was not subjected to an adverse employment action and she cannot demonstrate a causal connection between any adverse employment action and her protected activity. (See Def.'s Mots. 11-17.) Taylor disagrees. (See Pl.'s Resp. 14-22.) She argues that she can

21

make the necessary prima facie showing on both elements. (See id.)

The parties agree that Taylor filed EEO complaints alleging discrimination and retaliation and contacted EEO counselors. (See, e.g., Def.'s Mots. 3; Pl.'s Resp. 3-5; Def.'s Reply 1; Ex. I, ECF No. 63-9.)  By doing so, Taylor engaged in protected activity.  See 42 U.S.C. § 2000e-3(a); Hill v. Air Tran Airways, No. 09-4094, 2011 WL 1042178, at *3 (6th Cir. Mar. 23, 2011); Lindsay v. Yates, 578 F.3d 407, 418 (6th Cir. 2009); Payne v. O'Neil, 73 F. App'x 144, 146 (6th Cir. 2003); see also Belyakov v. Leavitt, 308 F. App'x 720, 729 (4th Cir. 2009).  Geithner does not dispute that Shields was at least minimally aware of Taylor's activities. (See Def.'s Mots. 12.)  Therefore, Taylor satisfies the first two elements necessary to make a prima facie showing of retaliation.  See Hunter, 565 F.3d at 996.

"For the purposes of a retaliation claim, an adverse employment action is one that 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'"  Hill v. Nicholson, 383 F. App'x 503, 512 (6th Cir. 2010) (quoting Garner v. Cuyahoga Cnty. Juvenile Court, 554 F.3d 624, 639 (6th Cir. 2009)); accord Thompson v. N. Am. Stainless, LP, 131 S. Ct. 863, 868 (2011) ("Title VII's antiretaliation provision prohibits any employer action that 'well might have dissuaded a reasonable worker from making or

22

supporting a charge of discrimination.'" (quoting Burlington N. & Santa Fe Ry. Co., 548 U.S. at 68)). "Examples of adverse employment actions in the retaliation context 'include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.'" Morales-Vallellanes v. Potter, 605 F.3d 27, 36 (1st Cir. 2010) (quoting Lapka v. Chertoff, 517 F.3d 974, 986 (7th Cir. 2008)). "Minor disruptions in the workplace, including 'petty slights, minor annoyances, and simple lack of good manners,' fail to qualify." Id. (quoting Burlington N. & Santa Fe Ry. Co., 548 U.S. at 68).

Taylor argues that several actions by Shields demonstrate that Taylor suffered an adverse employment action. (See Pl.'s Resp. 18-21.) The first is Shields' initial refusal to provide a letter of recommendation to Taylor for the Presidential Classroom program. (See id. at 18.) Because Shields changed her mind the same day and provided a positive letter of recommendation (see Def.'s Mots. 4; Pl.'s Resp. 4), her initial refusal to provide a letter of recommendation did not cause Taylor to lose an opportunity that might contribute to advancement. Shields' initial refusal was not sufficiently serious to dissuade a reasonable worker from making or

supporting a charge of discrimination.  Therefore, it was not an adverse employment action.  See Burlington N. & Santa Fe Ry. Co., 548 U.S. at 68; Kurtz, 2011 WL 1885983, at *6-7; see also Hunter, 565 F.3d at 995 ("Under the applicable federal framework, the 'anti-retaliation provision [of Title VII] protects an individual not from all retaliation, but from retaliation that produces an injury or harm.'" (quoting Burlington N. & Santa Fe Ry. Co., 548 U.S. at 67)).

The second action Taylor points to is Shields' alleged negative comments about Taylor to a DRC employee who called Shields to learn how Shields would respond to inquiries about Taylor from potential employers.  (See Pl.'s Resp. 18.)  As a threshold matter, the Court notes that there is a serious authentication issue with the evidence that purportedly shows Shields made negative comments to a DRC employee: a transcript signed by the DRC employee purporting to reflect the conversation.  (See id. at 3, 6-7; Ex. L, ECF No. 63-12.)  An EEOC Administrative Judge found that Taylor had altered the purported transcript of the telephone conversation.  (See Def.'s Mots. 14; Ex. 12, at 11-12, ECF No. 53-1.)  Taylor has not sworn that the transcript in this case is a complete and correct version of the transcript.  The DRC employee who purported to conduct the telephone interview signed her name below the statement that:

24

> WENDY CASEY IS AN ASSOCIATE OF DOCUMENTED REFERENCE
> CHECK, RECEIVING CORRESPONDENCE AT 1174 S. DIAMOND BAR
> BLVD., DIAMOND BAR, CA 91765.  THIS IS A DOCUMENT KEPT
> IN THE NORMAL COURSE OF BUSINESS.  I STATE UNDER
> PENALTY OF PERJURY THAT THE PRECEDING REFERENCE CHECK,
> AS STATED ABOVE, IS TRUE AND CORRECT.

(Ex. L, at 7, ECF No. 63-12.)  Below her name is the signature of Mike Rankin and the statement that he reviewed the report. (See id.)

Even if the Court could consider the transcript, the comments Shields allegedly made would not make a difference. Taylor has offered no evidence that DRC was a prospective employer to which she had applied for employment.  She admits that she asked DRC to contact Shields to learn what Shields would say about her to prospective employers.  (See Pl.'s Resp. 3, 18.)  Taylor has offered no evidence that actual prospective employers to which she had applied contacted Shields or that Shields made similar comments to them about her.  (See id. at 1-22.)  Taylor has not demonstrated that the comments Shields made were false.

Although courts have held that a negative reference may be an adverse employment action, they have only done so in contexts where the reference was made to a potential employer or otherwise affected the plaintiff's future employment prospects. See, e.g., Jute v. Hamilton Sundstrand Corp., 420 F.3d 166, 178-79 (2d Cir. 2005); Hillig v. Rumsfeld, 381 F.3d 1028, 1035 (10th

25

Cir. 2004); <u>Abbott v. Crown Motor Co.</u>, 348 F.3d 537, 541-43 (6th Cir. 2003); <u>Smith v. St. Louis Univ.</u>, 109 F.3d 1261, 1266 (8th Cir. 1997).

Taylor is correct that some courts have held that a plaintiff need not show that a negative reference precluded a particular employment prospect. <u>See, e.g.</u>, <u>Hillig</u>, 381 F.3d at 1033 ("Therefore, an act by an employer that does more than <u>de minimis</u> harm to a plaintiff's future employment <u>prospects</u> can, when fully considering 'the unique factors relevant to the situation at hand,' be regarded as an 'adverse employment action,' even where plaintiff does not show the act precluded a particular employment <u>prospect</u>.") (citations omitted); <u>Hashimoto v. Dalton</u>, 118 F.3d 671, 676 (9th Cir. 1997) ("[W]e conclude that the retaliatory dissemination of a negative employment reference violates Title VII, even if the negative reference does not affect the prospective employer's decision not to hire the victim of the discriminatory action.").

Although those cases hold that a plaintiff need not show that a particular employment prospect was <u>precluded</u>, they do not stand for the proposition that a plaintiff can establish an adverse employment action based on a supervisor's comments about her job performance without showing that an employment prospect <u>existed</u> or that the comments affected her external or internal employment prospects. Taylor offers no evidence that an actual

26

prospective employer contacted Shields, that Shields made comments similar to those allegedly made to DRC to an actual prospective employer, or that Shields' comments affected Taylor's external or internal employment prospects. Shields' alleged comments to the DRC employee were inconsequential.

One and a half months after Shields' alleged conversation with the DRC employee, Shields gave Taylor an overall rating of "Outstanding" and a perfect score in Taylor's performance appraisal. (See Pl.'s Resp. 7; Def.'s Reply 3.) Later that year, Taylor was promoted. (See Def.'s Mots. 3; Pl.'s Resp. 3.) Shields' comments to the DRC employee did not have even a de minimis effect. They were not an adverse employment action. See Thompson, 131 S. Ct. at 868; Burlington N. & Santa Fe Ry. Co., 548 U.S. at 68; Hunter, 565 F.3d at 995; cf. Freeman v. Potter, 200 F. App'x 439, 442 (6th Cir. 2006) (stating that an adverse employment action usually inflicts direct economic harm on the plaintiff); Brown v. Colgate-Palmolive Co., No. 104CV0782DFHWTL, 2006 WL 517684, at *16 (S.D. Ind. Mar. 2, 2006) ("Actions that do not carry immediate consequences for an employee's terms or conditions of employment, and where no tangible economic effect is ever realized, cannot constitute materially adverse employment actions under Title VII.").

The third action Taylor points to is her applying unsuccessfully for fifty-two positions within the IRS after

January 1, 2004. (See Pl.'s Resp. 18.) Taylor offers no greater detail about when she applied for the positions. (See id.; Ex. I, at ¶ 13, ECF No. 63-9) She states in an affidavit that the fifty-two applications she submitted were for a "transfer or promotion" but offers no further detail about whether they offered better career opportunities beyond her subjective impressions. (See Ex. I.)

"In general, a lateral transfer, or the refusal to make a lateral transfer, is not a materially adverse action." Freeman, 200 F. App'x at 443 (citation omitted). As the Court of Appeals has explained "an individual's 'subjective impression concerning the desirability of one position over another' is insufficient to render an employer's action materially adverse.'" Id. at 442 (citations omitted).

The Court has no evidence that the positions to which Taylor applied represented a promotion beyond her subjective impressions. Taylor offers no evidence that the refusal to accept her applications had any effect. She has not demonstrated that the IRS' refusal to promote or transfer her to one of the positions to which she applied constitutes an adverse employment action. See Hunter, 565 F.3d at 995; Freeman, 200 F. App'x at 442-46; see also Blackburn v. Shelby Cnty., --- F. Supp. 2d ---, No. 2:07-cv-02815, 2011 WL 692808, at *19 (W.D. Tenn. Feb. 18, 2011) (finding that plaintiff had not

28

demonstrated that denials of her requests for reassignment were adverse employment actions and finding that her subjective impressions about the desirability of one position over another were not relevant).[12]

The fourth action Taylor points to is the IRS' failure to remove information about her three-day suspension in 2005 from OPM's records.  (See Pl.'s Resp. 18.)  As a threshold matter, Taylor's evidence that OPM has a record of her suspension is an exhibit that states she received a three-day suspension at her office, the Department of the Treasury, but gives no indication on its face that it is from OPM's records.  (See id. at 4; Ex. H, ECF No. 63-8.)  Even if the record were from OPM, Taylor has offered no evidence that maintenance of the record has caused her any harm.  Taylor received a rating of "Outstanding" and a perfect score in her performance appraisal and was promoted in 2006.  (See Def.'s Mots. 3; Pl.'s Resp. 3, 7; Def.'s Reply 3.)

In the context of negative performance evaluations, courts have held that "a negative performance evaluation does not constitute an adverse employment action, unless the evaluation has an adverse impact [on] an employee's wages or salary." Blackburn, 2011 WL 692808, at *18 (quoting Tuttle v. Metro.

---

[12] Because Taylor has not demonstrated that the denial of her applications constitutes an adverse employment action, the Court need not consider Geithner's argument that the Court may not consider these discrete acts under National Railroad Passenger Corp. v. Morgan, 536 U.S. 101 (2002). (See Def.'s Reply 3-4.)

Gov't of Nashville, 474 F.3d 307, 322 (6th Cir. 2007)); accord
Kyle-Eiland v. Neff, 408 F. App'x 933, 941 (6th Cir. 2011).
"Thus, to characterize a negative performance evaluation as an
adverse employment action 'the plaintiff must point to a
tangible employment action that she alleges she suffered, or is
in jeopardy of suffering, because of the downgraded
evaluation.'"  Blackburn, 2011 WL 692808, at *18 (quoting White
v. Baxter Healthcare Corp., 533 F.3d 381, 402 (6th Cir. 2008));
see also Kyle-Eiland, 408 F. App'x at 941.  Because Taylor has
offered no evidence that the maintenance of the record had any
consequence for her, she has not demonstrated that it
constitutes an adverse employment action.  See Hunter, 565 F.3d
at 995; Blackburn, 2011 WL 692808, at *18; Brown, 2006 WL
517684, at *16; see also Hollins v. Atl. Co., 188 F.3d 652, 662
(6th Cir. 1999) ("Hollins failed to establish a prima facie case
of retaliation because she produced no evidence to show that the
lowered performance ratings actually had an effect on her wages
such that a court may conclude that there was a materially
adverse employment action.").  A reasonable worker would not be
dissuaded from making or supporting a charge of discrimination
by an employer maintaining a record without consequences for the
worker.  See Thompson, 131 S. Ct. at 868; Burlington N. & Santa
Fe Ry. Co., 548 U.S. at 68.

After arguing that the four actions discussed above constitute adverse employment actions, Taylor provides other examples of actions that she claims are adverse employment actions in her discussion of the causation element of her prima facie case. (See Pl.'s Resp. 19-21.) She argues that the letter Shields gave her for failing to follow the chain of command is a written reprimand and constitutes an adverse action. (See id. at 3, 19-20.) The letter does not purport to be a disciplinary action: it states that "[r]efusing to follow the chain of command may be considered an act of insubordination and could lead to disciplinary actions." (Ex. C, ECF No. 63-3 (emphasis added); see Pl.'s Resp. 3.) Taylor offers no evidence that the letter had any effect on her employment. She received a rating of "Outstanding" and a perfect score in her performance appraisal and was promoted in 2006. (See Def.'s Mots. 3; Pl.'s Resp. 3, 7; Def.'s Reply 3.) Therefore, Shields' giving Taylor the letter does not constitute an adverse employment action. See Hunter, 565 F.3d at 995; see also Haynes v. Level 3 Commc'ns, LLC, 456 F.3d 1215, 1224 (10th Cir. 2006) ("A written warning may be an adverse employment action only if it effects a significant change in the plaintiff's employment status."); Whittaker v. N. Ill. Univ., 424 F.3d 640, 648 (7th Cir. 2005) (concluding that written warnings without any tangible employment consequences were not adverse employment actions);

31

Jones v. Butler Metro. Hous. Auth., 40 F. App'x 131, 137 (6th Cir. 2002) ("Unless the letter [of reprimand] accompanied some other action, such as a demotion or salary reduction, it is not an adverse employment action.") (citations omitted); Mendoza v. AutoZone, Inc., No. 3:08CV2321, 2010 WL 1956549, at *7 (N.D. Ohio May 14, 2010) ("Being disciplined or counseled is similarly not alone an adverse employment action.") (citations omitted). A reasonable worker would not be dissuaded from making or supporting a charge of discrimination by a warning without any effects.  See Thompson, 131 S. Ct. at 868; Burlington N. & Santa Fe Ry. Co., 548 U.S. at 68.

Taylor argues that a letter Shields gave her warning her not to use a cellular phone in the work area is an adverse action.  (See Pl.'s Resp. 3; Ex. D, ECF No. 63-4.)  The letter does not purport to be disciplinary action.  (See Ex. D.)  It states that, if Taylor were observed using her cellular phone in the work area again, "disciplinary action may be taken."  (Id. (emphasis added))  Taylor offers no evidence that the letter had any effect on her employment.  Therefore, the letter was not an adverse employment action.  See Thompson, 131 S. Ct. at 868; Burlington N. & Santa Fe Ry. Co., 548 U.S. at 68; Hunter, 565 F.3d at 995; see also Haynes, 456 F.3d at 1224; Jones, 40 F. App'x at 137.

Taylor argues that her three-day suspension beginning on May 9, 2005, constitutes an adverse action.[13]   (See Pl.'s Resp. 3, 20.)   The suspension was without pay.   (See Ex. B, ECF No. 63-2.)   Although the IRS agreed to remove the record of her suspension from WebSETR in the settlement agreement, there is no evidence that Taylor received back pay.   (See Ex. 7, ECF No. 53-1.)   "The loss of a salary for a period of months, weeks, or days is a 'materially adverse' action which 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'"   Alvarez v. Royal Atl. Developers, Inc., 610 F.3d 1253, 1268 (11th Cir. 2010) (quoting Burlington N. & Santa Fe Ry. Co., 548 U.S. at 68)).   Therefore, the three-day suspension Taylor received satisfies the adverse employment action requirement of Taylor's prima facie case.   See id.; see also LeMaire v. La. Dep't of Transp. & Dev., 480 F.3d 383, 390 (5th Cir. 2007) (concluding that a two-day suspension without pay was an adverse employment action) (citing Burlington N. & Santa Fe Ry. Co., 548 U.S. at 68).

The only adverse employment action Taylor suffered was her three-day suspension on May 9, 2005.   To establish a prima facie

---

[13] Taylor states that a document reflecting her three-day suspension shows that she was suspended for three days on May 5, 2005.   (See Pl.'s Resp. 8; Ex. H, ECF No. 63-8.)   The document she cites states that she was suspended on May 9, 2005.   (See Ex. H, ECF No. 63-8; see also Ex. B, ECF No. 63-2 ("It is my decision that you be suspended from duty and pay for a period of three calendar days commencing 4:00 p.m. May 9, 2005.   You will return to duty at 4:00 p.m. May 12, 2005.").)   Therefore, the Court concludes that her three-day suspension began on May 9, 2005.

case of retaliation, Taylor must demonstrate a causal connection between her protected activity and her three-day suspension. See Hunter, 565 F.3d at 996 (citation omitted). "To establish a causal connection, a plaintiff must proffer evidence sufficient to raise the inference that her protected activity was the likely reason for the adverse action." Michael v. Caterpillar Fin. Servs. Corp. 496 F.3d 584, 596 (6th Cir. 2007) (quoting Dixon v. Gonzales, 481 F.3d 324, 333 (6th Cir. 2007)).

"Generally, temporal proximity alone is not enough to establish a causal link." Edmond v. State of Tenn. Dep't of Prob. & Parole, 386 F. App'x 507, 514 (6th Cir. 2010) (citations omitted). However, temporal proximity may suffice to establish a causal link in some circumstances:

> Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation. But where some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality.

Mickey v. Zeidler Tool & Die Co., 516 F.3d 516, 525 (6th Cir. 2008) (citing Little v. BP Exploration & Oil Co., 265 F.3d 357, 365 (6th Cir. 2001)); accord Grubb v. YSK Corp., 401 F. App'x 104, 112 (6th Cir. 2010) ("[T]his Circuit has embraced the premise that in certain distinct cases where the temporal

34

proximity between the protected activity and the adverse employment action is acutely near in time, that close proximity is deemed indirect evidence such as to permit an inference of retaliation to arise." (quoting DiCarlo v. Potter, 358 F.3d 408, 421 (6th Cir. 2004))). The reason temporal proximity is sometimes sufficient is that "if an employer immediately retaliates against an employee upon learning of his protected activity, the employee would be unable to couple temporal proximity with any such other evidence of retaliation because the two actions happened consecutively, and little other than the protected activity could motivate the retaliation." Mickey, 516 F.3d at 525. "Thus, employers who retaliate swiftly and immediately upon learning of protected activity would ironically have a stronger defense than those who delay in taking adverse retaliatory action." Id. Such circumstances arise "in rare cases." Id.; accord Vereecke v. Huron Valley Sch. Dist., 609 F.3d 392, 401 (6th Cir. 2010) ("[W]e have rarely found a retaliatory motive based only on temporal proximity."); Evans v. Prospect Airport Servs., Inc., 286 F. App'x 889, 895 (6th Cir. 2008) (stating that temporal proximity is sufficient "in a small subset of cases").

"Beyond temporal proximity, other indicia of retaliatory conduct would include evidence that the plaintiff was treated differently, either less positively or more negatively, than

similarly situated employees who had not exercised Title VII rights, or evidence that the plaintiff was subjected to closer disciplinary scrutiny after exercising Title VII rights." Novotny v. Elsevier, 291 F. App'x 698, 705 (6th Cir. 2008) (quoting Evans, 286 F. App'x at 895).

Here, Taylor argues in her brief that she was treated differently from Stephanie Boone-Gage ("Boone-Gage"), an employee who had cursed at her and threatened her. (See Pl.'s Resp. 20.) Taylor offers no evidence that Boone-Gage had not exercised Title VII rights. Taylor also offers no evidence of her own conduct preceding her suspension other than that she was suspended "for creating a disturbance in the workplace." (See id. at 8; Ex. H, ECF No. 63-8.) Based on the evidence Taylor offers, the Court cannot compare Taylor's and Boone-Gage's conduct to determine whether they were similarly situated but treated differently. Because the only evidence of Boone-Gage's conduct is Taylor's assertions in her brief, which contain no citations to any evidence of Boone-Gage's conduct, Taylor has offered no admissible evidence suggesting that a similarly-situated employee who had not exercised Title VII rights was treated differently from her. See InterRoyal Corp., 889 F.2d at 111; Cloverdale Equip. Co., 869 F.2d at 937; Blackburn, 2011 WL 692808, at *1-2; see also United States v. $30,000 in U.S. Currency, 30 F. App'x 473, 484 (6th Cir. 2002) ("When a motion

36

for summary judgment is made and supported by competent admissible evidence, the non-movant may not rest on his pleadings but must come forward with affidavits or other admissible evidence setting forth specific facts showing there is a genuine issue for trial.") (citation omitted); Tucker v. SAS Inst., Inc., 462 F. Supp. 2d 715, 723 (N.D. Tex. 2006) ("Unless the assertions contained in the plaintiff's brief are supported by accurate citations to the record, they are merely 'unsubstantiated assertions' which are not competent summary judgment evidence."); Boyer v. Gildea, No. 1:05-CV-129-TS, 2005 WL 2648673, at *3 (N.D. Ind. Oct. 17, 2005) ("Factual assertions made by a party opposing summary judgment that are not supported by admissible evidence cannot create a genuine issue of fact.").

Taylor offers no direct evidence that the decisionmakers at the IRS responsible for her suspension considered her protected activity. The only evidence on the record suggesting a causal connection between her protected activity and her three-day suspension is temporal proximity. Before her three-day suspension began on May 9, 2005, Taylor filed a formal complaint alleging discrimination on June 25, 2004; filed a formal complaint alleging retaliation on September 3, 2004; contacted an EEO counselor in late September or early October to allege that Shields had retaliated against her by sending her a written warning on September 27, 2004; contacted an EEO counselor at

some point later in 2004; and filed "an informal EEO retaliation complaint, or pre-complaint [on April 13, 2005], concerning the three-day suspension that was proposed and that later was imposed" on her. (Ex. I, ECF No. 63-9; see Pl.'s Resp. 5.) By doing so, Taylor engaged in protected activity before her three-day suspension. See, e.g., Lindsay, 578 F.3d at 418; Blume v. Potter, 289 F. App'x 99, 105 (6th Cir. 2008).

Because no evidence of retaliatory conduct exists on the record beyond temporal proximity, that several months had elapsed between Taylor's protected activities in 2004 and her three-day suspension on May 9, 2005, is not sufficient to raise an inference that her protected activities were the likely reason for her suspension. See Mickey, 516 F.3d at 525; Michael, 496 F.3d at 596; see also Blume, 289 F. App'x at 106 (concluding that a six-month period between an employee's protected activity and an adverse action was insufficient to demonstrate causation); Arendale v. City of Memphis, 519 F.3d 587, 606 (6th Cir. 2008) (rejecting plaintiff's argument that retaliatory events occurring two months after an EEOC charge of discrimination were sufficient to establish causation and affirming summary judgment for the defendant).

Although Taylor filed "an informal EEO retaliation complaint, or pre-complaint" on April 13, 2005, about the pending three-day suspension she eventually began serving on May

38

9, 2005, that is not the proper sequence of events to demonstrate that protected activity caused an adverse employment action.[14]  See Leitgen v. Franciscan Skemp Healthcare, Inc., 630 F.3d 668, 676 (7th Cir. 2011) (concluding that, where two supervisors had discussed ways to discipline an employee before the employee engaged in protected activity, the employee could not establish causation although she was forced to resign soon after her protected activity).  As the Sixth Circuit has explained, temporal proximity is sometimes sufficient to establish causation because no other evidence of causation exists when employers immediately retaliate against employees after learning of protected activity.  See Mickey, 516 F.3d at 525.  That reasoning does not justify finding causation where, as here, an employee suspects she may be disciplined in the future for her present actions, engages in protected activity to protest the possible future imposition of the discipline, and the employer later imposes the discipline the employee thought would be imposed.  See Leitgen, 630 F.3d at 675-76; see also Dansler-Hill v. Rochester Inst. of Tech., 764 F. Supp. 2d 577, 582 (W.D.N.Y. 2011).

The order of events surrounding Taylor's three-day suspension does not raise an inference that her protected

---

[14] Although Taylor filed the informal complaint or pre-complaint on April 13, 2005, the IRS did not send her a letter proposing to suspend her for three days until April 15, 2005, and did not issue a final decision to suspend her until May 2, 2005.  (See Ex. B, ECF No. 63-2.)

activity was the likely reason for the three-day suspension. See Leitgen, 630 F.3d at 675-76; Dansler-Hill, 764 F. Supp. 2d at 582. This is not an exceptional case in which temporal proximity sufficiently demonstrates causation. See Vereecke, 609 F.3d at 401; Evans, 286 F. App'x at 895. There is no reason to deviate from the general rule that temporal proximity alone is not sufficient to establish causation. See Edmond, 386 F. App'x at 514. Because Taylor has not proffered sufficient evidence to raise the inference that her protected activity was the likely reason for her three-day suspension, she has not established a prima facie case of retaliation. See Hunter, 565 F.3d at 996; Michael, 496 F.3d at 596. No reasonable jury could find the causation requirement satisfied. Therefore, Geithner's summary judgment motion must be granted. See Hunter, 565 F.3d at 996-97.

### V.   Conclusion

For the foregoing reasons, Geithner's Motion to Dismiss Taylor's breach of settlement agreement claim is GRANTED, and his Motion for Summary Judgment on Taylor's retaliation claim is GRANTED. All pending motions are DENIED as moot.

So ordered this 6th day of July, 2011.

s/ Samuel H. Mays, Jr.
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE